IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BARBARA WILLCOX,

        Plaintiff,

v.                                                                                  No. CV 14-01164 WJ/GBW

HARTFORD LIFE INSURANCE COMPANY,
HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, and AFFINION
BENEFITS GROUP, INC.,

        Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon the Motion for Summary Judgment filed on March 16, 2015, by Defendants Hartford Life Insurance Company ("Hartford") and Hartford Life and Accident Insurance Company ("HLAIC"), **(Doc. 9)**, and joined by Defendant Affinion Benefits Group ("Affinion"), *see* **(Doc. 11)**; and upon Plaintiff's Motion for Summary Judgment, **(Doc. 28)**, filed June 2, 2015. Having considered the parties' written and oral arguments and the applicable law, the Court finds that Defendants' motion is well taken and, accordingly, is **GRANTED.** With the granting of Defendants' Motion for Summary Judgment, Plaintiff's Motion for Summary Judgment is **DENIED** as moot.

### BACKGROUND

The following factual statements are undisputed. HLAIC issued accidental death and dismemberment policy number ADD-10900 (hereinafter "the Policy") to Financial Services

Association, with coverage made available to members of participating financial organizations. The Policy's insuring clause states that payment of benefits is provided if an insured suffers an "Injury" that results in loss of life, with "Injury" defined as "bodily injury resulting directly from accident and independently of all other causes." *See* (**Doc. 9 Ex. A**), Policy, at 23, 25. The Policy also includes language excluding coverage for "intentionally self-inflicted Injury, suicide or attempted suicide, whether sane or insane." *Id.* at 24.

As a member of a participating financial organization, Decedent Eugene Willcox, the now-deceased husband of Plaintiff Barbara Willcox, enrolled in coverage under the Policy in November 2007 and designated Plaintiff as the beneficiary. On May 14, 2013, Decedent died from a self-inflicted gunshot wound, with his manner of death listed on his death certificate as "suicide."

Approximately one year later, Plaintiff submitted a claim form to HLAIC in which she listed the cause of the purported accident as "unknown / suicide." HLAIC denied Plaintiff's claim on August 8, 2014, stating that Decedent's death did not constitute a covered loss under the Policy.

In November 2014, Plaintiff filed the operative complaint in state court, alleging bad faith, breach of contract, and violations of the New Mexico Unfair Insurance Claims Practices Act and the New Mexico Unfair Practices Act. *See* (**Doc. 1 Ex. B**), Complaint. Defendants removed the action to this Court shortly thereafter. Hartford and HLAIC filed their summary judgment motion on March 16, 2015, and Affinion joined the motion ten days later. Plaintiff later filed her cross motion for summary judgment.[1] The Court held a hearing on June 30, 2015, in which the parties reiterated their positions.

---

[1] Because the Court had already scheduled a hearing on Defendants' motion, and because Plaintiff's motion raised substantially the same arguments at issue in Defendants' motion, the Court stayed further briefing on Plaintiff's

**LEGAL STANDARD**

Summary judgment is appropriate where the pleadings, discovery materials, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit, and the dispute is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). In ruling on a motion for summary judgment, the Court may neither make credibility determinations nor weigh the evidence. *See Gossett v. Oklahoma*, 245 F.3d 1172, 1175 (10th Cir. 2011) (quotation omitted).

The party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See, e.g.*, *Celotex*, 477 U.S. at 323; *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the nonmoving party must designate specific facts showing that there is a genuine issue for trial. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The existence of some alleged, immaterial factual dispute between the parties or a mere "scintilla of evidence" supporting the nonmoving party's position will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 256.

**DISCUSSION**

Defendants' position is that none of Plaintiff's claims can survive if HLAIC's denial of her claim for benefits was proper. As such, Defendants launch two attacks on Plaintiff's

---

motion pending its ruling on Defendants' motion. Since the Court today grants Defendants' motion, Plaintiff's motion is denied as moot.

claims—that Decedent's death was not covered under the Policy's insuring clause, and that his death fell under an enforceable suicide exclusion in the Policy.

## I.      Coverage of Suicide as an Accident

According to the Policy's insuring clause, benefits are only paid if an insured suffers "Injury" that results in loss of life, with "Injury" defined as "bodily injury resulting directly from accident and independently of all other causes." Defendants argue that the Court need not reach the impact of the Policy's suicide exclusion, because this definition of "Injury" cannot encompass suicide since "[s]uicide is, by definition, not an accident." *See* **(Doc. 9)**, Motion, at 4.

Although Defendants are correct in a general sense, *see Silva v. Lovelace Health Sys., Inc.*, 331 P.3d 958, 964 (N.M. Ct. App. 2014) ("[G]enerally speaking, suicide is an intentional act . . . ."(citation omitted)), there are exceptions to the principle that self-destruction cannot be considered an accident under such language. For example, death via unintentional overdose of narcotics may be considered an accident. *See Vallejos v. Colonial Life & Acc. Ins. Co.*, 91 N.M. 137, 139 (1977). Similarly, many insurers have refined their suicide exclusion clauses precisely because suicide may be considered "accidental" if committed by someone who is insane and who does not intend to take his own life. *See* 10 PLITT ET AL., COUCH ON INS. § 140:91 (3d ed. 2014) ("The death of an insured by suicide while insane and without any intention of taking his or her own life . . . is generally regarded as being by 'accident' or by 'accidental means' within the meaning of those terms as used in accident policies."); *see also Estate of Galloway v. Guar. Income Life Ins. Co.*, 104 N.M. 627, 628 (1986) (citing W.E. Shipley, *Insurance: Construction of 'Sane or Insane' Provision of Suicide Exclusion*, 9 A.L.R. 3d 1015 (1966)). If suicide by definition could never be considered accidental, suicide exclusions such as the one in the Policy would never be necessary.

As Defendants emphasize in their reply brief, their argument here is not factual but legal; they contend that as a matter of law, suicide cannot ever be considered an accident in the insurance context, regardless of the presence or absence of any suicide exclusions. That argument is unpersuasive. Accordingly, the Court turns to consider the validity of the Policy's suicide exclusion.

## II.     Suicide Exclusion

Even though the insuring language itself may not foreclose coverage of Decedent's suicide, the Policy also contains a provision excluding coverage for "intentionally self-inflicted injury, suicide or attempted suicide, whether sane or insane." Although Plaintiff does not dispute that this provision touches on Decedent's suicide, she contends that the exclusion cannot be valid under state law. Defendants attack this position on several grounds.

### A.  Is the Policy a Life Insurance Policy?

Insurance policy provisions that "exclude[] or limit[] the insurer's liability where injury or death results from suicide" are permissible, unless the state prohibits such exclusions by statute. *See Galloway*, 104 N.M. at 628. New Mexico has created just this sort of prohibition by disallowing any clauses preventing insurance coverage for death by suicide. *See* NMSA 1978, § 59A-20-25(A)(2) (prohibiting exclusions "for death caused in a certain specified manner").[2] However, by the terms of that statute, this prohibition on suicide exclusions only applies to life insurance policies, and only those delivered in New Mexico. *See id.*

In their reply brief, and later at oral argument, Defendants posited that § 59A-20-25 is not applicable here at all since the Policy was purportedly delivered in Tennessee rather than New Mexico. *See* (**Doc. 9 Ex. A**), Policy, at 1. However, because Defendants first raised this position

---

[2] *But see* NMSA § 1978, § 59A-20-25(A)(2)(e) (allowing provisions that exclude coverage for suicide "within two years from the date of issue of the policy"). Decedent died after two years from the date of issue of the Policy, and neither party argues that this statutory language applies here.

in their reply brief without Plaintiff having the opportunity to respond, the Court will not consider this argument.. *See United States v. Herget*, 585 F. App'x 948, 951 (10th Cir. 2014) (citing *Anderson v. U.S. Dep't of Labor*, 422 F.3d 1155, 1174-75 (10th Cir. 2005)); *see also United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The [C]ourt will not consider such issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.").

Defendants next argue that the Policy is not covered by the prohibition on suicide exclusions because it is not a "life insurance" policy. In New Mexico, "life insurance" is broadly defined as the "insurance of human lives and every insurance appertaining thereto." NMSA 1978, § 59A-7-2. Plaintiff's response brief quotes the relevant statutory language: "The transaction of life insurance includes health insurance, as defined in Section 59A-7-3," as well as "additional incidental benefits in event of death or dismemberment by accident or accidental means." *Id.*

Plaintiff argues in part that the Policy should be considered a "life insurance" policy because it features "*additional incidental benefits* in event of death or dismemberment by accident or accidental means." *See id.* (emphasis added). The Court finds that the Policy does not fit neatly into this framework, as it does not feature accidental death and dismemberment benefits as merely "additional incidental benefits" to a more expansive insurance policy. Rather, the Policy exists *solely* to provide benefits in the case of accidental death and dismemberment. Therefore, the Policy cannot fall under this particular definition of "life insurance."

On the other hand, the Policy should be considered life insurance under New Mexico law because it is a form of health insurance. The "insurance of human beings against . . . *disablement or death by accident or accidental means*, or the expense thereof," falls under the definition of

"health insurance." *See* NMSA 1978, § 59A-7-3(A). And "health insurance" is also considered to be a type of life insurance under New Mexico law. *See id.* § 59A-7-2 (defining life insurance to include "health insurance, as defined in Section 59A-7-3"). In other words, a policy that insures against accidental death or disablement is considered to be health insurance, and health insurance is itself a particular form of life insurance.

Here, the Policy is properly considered to be "health insurance" since it constitutes "insurance of human beings against . . . disablement or death by accident or accidental means." Since "health insurance" is considered to be a form of "life insurance," the Policy is also a form of life insurance. Therefore, Plaintiff is correct in asserting that the Policy should be considered "life insurance" under New Mexico law.

B.  Is the Policy's Suicide Exclusion Enforceable?

Because the Policy is a form of life insurance, it would presumptively fit into the general prohibition against suicide exclusions in life insurance policies. *See* NMSA 1978, § 59A-20-25(A)(2). However, Defendants argue in the alternative that its suicide exclusion is still enforceable because the Policy falls under one of the statutory exceptions to that prohibition.

Although § 59A-20-25(A)(2) generally prohibits life insurance policies from containing suicide exclusions, the same statute lists a limited number of exceptions to this rule. *See* NMSA 1978, § 59A-20-25(C). Of particular relevance, health insurance is one type of life insurance for which suicide exclusions are permissible. *See id.* ("This section [prohibiting suicide exclusions and other provisions] shall not apply to . . . health insurance . . . ."). Thus, even though a health insurance policy is considered to be "life insurance," it is a form of life insurance that may include an enforceable suicide exclusion.

7

As discussed above, although the Policy is considered to be life insurance under New Mexico law, it is a particular type of life insurance, namely health insurance. Because health insurance is a type of life insurance that is specifically exempted from the prohibition on suicide exclusion, the Policy's suicide exclusion is permissible and enforceable. Further, because Decedent's death constitutes "intentionally self-inflicted Injury, suicide or attempted suicide, whether sane or insane," the exclusion is applicable here. By the enforceable terms of the Policy, Decedent's death is excluded from coverage.

As Defendants assert, Plaintiff's claims of bad faith, unfair practices, and breach of contract cannot stand if HLAIC's denial of Plaintiff's benefits claim was proper. Under New Mexico law, suicide exclusions are permissible in health insurance policies such as the Policy at issue here, and Plaintiff does not dispute that this exclusion, if enforceable, applies to Decedent's death. As such, the denial of Plaintiff's claim for benefits was appropriate, and Defendants are entitled to summary judgment.

Finally, the Court notes that Defendants also advanced the argument that the suicide exclusion provision of the policy is enforceable because the Policy is a group life insurance policy and as such, the suicide exclusion is enforceable under § 59A-20-25(C). While this argument appears to be meritorious, the Court need not definitively decide this issue since the Court has determined for the reasons stated above that the Policy's suicide exclusion is enforceable.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment, **(Doc. 9)**, is GRANTED; Plaintiff's Motion for Summary Judgment, **(Doc. 28)**, is DENIED AS MOOT; and Plaintiff's claims against all Defendants are DISMISSED WITH PREJUDICE.

**SO ORDERED**

$\overline{\phantom{UNITED STATES DISTRICT JUDGE}}$
UNITED STATES DISTRICT JUDGE